UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JIMMY D. HOWLE, | No. CV 05-08058-VBK |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| v. | (Social Security Case) |
| JO ANNE B. BARNHART, Commissioner of Social Security, | |
| Defendant. | |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The parties have filed their pleadings and supporting memoranda, and the Commissioner has filed the certified AR. After reviewing the matter, the Court concludes that the decision of the Commissioner must be reversed and the matter remanded for further hearing.

Plaintiff asserts that the ALJ did not properly consider medical evidence of claudication afflicting Plaintiff.[1] At the hearing before the Administrative Law Judge ("ALJ"), (Administrative Record ["AR"] 426-462), Dr. Jensen, a Medical Expert ("ME") testified that in approximately April of 2000, according to Plaintiff's treatment records, a peripheral vascular condition ("PVC") became evident. (AR 441.) The ME testified that two months before the hearing, Plaintiff underwent an aortic femoral bypass procedure as a result of his PVC. (Id.)

Plaintiff's descriptions of physical limitations and pain resulting from walking appear throughout the record: in his report to his treating sources over substantial periods of time, and in his testimony at the hearing. For example, in December 2002, Plaintiff reported issues of pain as a result of walking. (AR 216.) One of his treating physicians, Dr. Wang, on February 23, 2001 diagnosed possible vascular claudication in his left leg. (AR 228.) Progress notes in 2003 indicate a diagnosis of leg claudication. (AR 297.) Just prior to his surgery, on January 28, 2004, a notation was made of progressive claudication, with a reduction in Plaintiff's ability to walk, from seven blocks to one-half block, after which the resulting pain failed to dissipate until Plaintiff had rested 10 or 15 minutes. (AR 374.) On March 6, 2003, Plaintiff reported to his treating source that he was only able to walk one-half block before leg pains started. (AR 399.)

Two weeks prior to his surgery, on February 3, 2004, an

---

1   The Commissioner defines claudication as "a circulation problem that causes pain during exercise." (See Joint Stipulation ["JS"] at 11, fn. 1.)

arteriogram noted the presence of occlusion and stenosis in Plaintiff's left and right legs, respectively. (AR 285.)

At the hearing, Plaintiff described leg pain from walking as lasting 10 to 15 minutes, which was relieved by sitting. (AR 446.) After relieving the pain, he would be able to walk again, perhaps half the original distance, and the pain cycle would repeat itself. (AR 447.) When asked by his lawyer how far he could now walk, Plaintiff indicated that he hadn't "experimented" since his operation two months earlier, "so I have no idea." (AR 449.)

In her decision, the ALJ adopted in its entirety as Plaintiff's residual functional capacity ("RFC") the exertional assessment of the ME. (See AR at 25, Finding 6, 21, 442.)  This RFC determination, however, constitutes the principal error in the decision, because it fails to account for the pain and functional impact of the lower extremity claudication caused by Plaintiff's PVC.  Indeed, as Plaintiff argues, when the ME was questioned at the hearing by Plaintiff's attorney, he conceded that, typically, claudication results in pain as a result of walking which may require between five to 15 minutes of rest to resolve; however, the ME admitted that this was not his area of expertise, because he is not a vascular surgeon. (AR 443-444.)  Despite this concession of a lack of expertise, however, the ME readily offered a functional assessment which posited that Plaintiff would be capable of standing and walking four hours out of an eight-hour day.  This allowed nothing for rest periods. (AR 442.)  The ALJ's adoption of this functional assessment in her determination of Plaintiff's RFC is clearly error.  While basing her adoption of the ME's opinion on the fact that this opinion was "consistent with the medical evidence of record and the conclusions of

3

the State Agency reviewing physicians" (AR 21), the Court's review of this same record leads it to the conclusion that there is no such support to be found. As to the State Agency reviewing physicians (see AR at 204-214), their report,[2] dated November 7, 2002, is based on a finding that Plaintiff's examinations indicate "no sign of peripheral vasc [sic] disease, ..." (AR 213.)  The ME, however, found evidence of PVC dating back to 2000.  Consequently, the findings of the State Agency physicians are irrelevant insofar as their usefulness in supporting the ME's assessment.

With regard to the other medical evidence in the record, the reports of Plaintiff's treating physicians, briefly summarized in this Opinion, clearly do not support the ME's failure to account for PVC or claudication in assessing Plaintiff's exertional abilities, much less that he ignored the pain which Plaintiff described as resulting after walking even one-half block.  The ALJ makes some reference to a consultative internal medicine examination ("CE") performed on October 7, 2002 by Dr. Wang (see AR at 107-111); however, it is apparent from the report of Dr. Wang that no consideration was given to PVC or claudication, and in fact, Dr. Wang reported, "no signs of peripheral vascular disease." (AR at 110.)  This was apparently based on a brief examination of Plaintiff's feet.  Without doubt, Dr. Wang's examination did not address these issues.  Consequently, Dr. Wang's report is also irrelevant as support for the ME's functional assessment, or for the ALJ's adoption of that assessment in

---

2   In the JS, the Commissioner consistently refers to findings of Drs. Lopez and Glaser (see JS at 10), apparently referring to the State Agency physicians.  The report, however, is attributed to Drs. Lopez and Garcia. (AR 214.)  The Court assumes that the Commissioner mistakenly referred to Dr. Garcia as Dr. Glaser.

determining Plaintiff's RFC.

The parties devote substantial attention to the question of whether or not Plaintiff met Listing level requirements with regard to the claudication issue. While Plaintiff argues that the evidence in the record satisfies Listing 4.12 (AR 8-9), it does not appear that Plaintiff received the type of specific testing of his systolic blood pressure at his ankle area after exercise which would be required to determine whether he met Listing 4.12. Considering the fact that Plaintiff received surgical intervention in February 2004 for this very problem, on remand that issue would appear to be water under the bridge. Nevertheless, the question remains to be resolved as to the nature and extent of Plaintiff's RFC, given full consideration of his PVC and claudication, during the relevant alleged period of disability. In making that determination, proper consideration should be given to the testimony and self-reporting of Plaintiff regarding the pain and physical limiting effects as a result of walking or other exercise, during this relevant period. The ALJ's statement of reasons to detract from Plaintiff's credibility with regard to the issue of his leg pain and its functional effects are not sufficient. For example, the recitation in the decision of statements Plaintiff made regarding abstinence from drugs have no apparent relevance to the question of whether or not his PVC manifested itself in severe pain and physical limitations after walking. Further, the ALJ's notation that Plaintiff failed to testify at the hearing that he was having any "residuals" after his February 2004 surgery again has no relevance to the issue of his credibility, because the hearing occurred very soon after the surgery, and Plaintiff candidly stated that he had not had the opportunity to test his ability to walk since the surgery.

Finally, the ALJ's notation that Plaintiff had indicated he was able to perform limited activities of daily living ("ADLs") was not contradicted by his apparent statement that he could do some grocery shopping, keep doctors' appointments and probation appointments, and handle his own mail. (See AR at 22.)  Even if Plaintiff were able to perform them, none of these activities would serve to detract from his credibility regarding the pain and limitations resulting from his PVC. Indeed, the Court finds nothing in the record which could reasonably constitute a basis for detracting from Plaintiff's credibility, and on remand, credibility will be accorded to Plaintiff concerning these issues.

For the reasons set forth in this Opinion, this matter will be remanded for further hearing consistent with this Decision.

**IT IS SO ORDERED.**

DATED: September 7, 2006

　　　　　　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　VICTOR B. KENTON
　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE